# WHEELING.

## FLOYD et al. v. JONES.

Submitted June 4, 1881.   Decided April 8, 1882.

1. F. filed her bill in chancery against J. alleging, that he had a note on H. which was her property by transfer from her deceased husband; which note had been obtained by J. from her husband by fraud, accident or mistake, and that he had committed spoliation in the alleged written assignment on the back of the note, under which he claimed. J. answered averring, that the note had been assigned to him for value by the husband and denying any fraud, accident, mistake or spoliation. There was no evidence to sustain the allegations of the bill ; but it appeared from the

evidence, that J. was present, when F. was induced to join in certain deeds in part consideration of this note and others, and that he fraudulently concealed from her, that he was the assignee of the note. HELD:

F. is not entitled to recover upon such allegations and proof. (p. 364)

2. The allegations of the bill and the proof must correspond; and a party will not be allowed to recover upon a case proved essentially different from that alleged in the bill.   (p. 364.)

Appeal from and *supersedeas* to a judgment of the circuit court of the county of Marion, rendered on the 11th day of November, 1879, in a cause in said court then pending, wherein, Lucinda Floyd and Alpheus T. Hibbs were plaintiffs, and Amos Jones was defendant, allowed upon the petition of said plaintiffs.

Hon. A. Brooks Fleming, judge of the second judicial circuit, rendered the judgment appealed from.

HAYMOND, JUDGE:

During the special term of this Court held in the fall of 1881, this cause was the subject of examination and consideration of each member of the Court as then constituted, in consultation thereon. The preparation of the opinion of this Court was assigned to our lamented Bro. JUDGE PATTON, now deceased. The opinion was not prepared by JUDGE PATTON during said special term, because he desired to consider the case further. But during the present term of this Court JUDGE PATTON did prepare and commit to writing his opinion in the case, including a statement of the case and syllabus of points adjudicated in the opinion, to be by him submitted to his brethren on the next consultation day of the members of the court, which would have been Friday the 31st day of March, 1882, the opinion, statement and syllabus having been completed by Judge Patton on Monday the 27th day of March, 1882. On the night previous to the consultation day, when the syllabus, statement and opinion were to be submitted to his brethren of the bench in consultation for their consideration, Judge Patton suddenly died. The said syllabus, statement and opinion prepared by Judge Patton constitute his last judicial action as a judge of this court, so far as is certainly known by us. Since the death of Judge Patton we

have examined and again considered this case and also the syllabus, statement and opinion therein as prepared by JUDGE PATTON and we concur in the said syllabus, statement and opinion and adopt them as our own, as though they had been prepared by one of us and concurred in by the others. Under the circumstances we deem it fit and proper, that the opinion of JUDGE PATTON as prepared by him in this cause should be incorporated into this opinion as the opinion of this court in this cause. The statement and opinion as prepared by Judge Patton are as follows:

PATTON, JUDGE, furnished the following statement of the case :

"Lucinda Floyd and Alpheus T. Hibbs, her son by a former marriage, filed their bill in the circuit court of Marion county on the 2d day of April, 1879, against Amos Jones. The bill alleges, that the complainant, Lucinda, in the life-time of her second husband, John N. Floyd, was induced to join in two deeds to Oliver P. Floyd and Martha E. Robinson, children of her husband by a former marriage ; that the consideration, upon which she was to execute said deeds, was the life-interest in a small tract of land, and certain notes or obligations amounting in the aggregate to about $800.00; but that she did not know the number, description or amount of said notes, never having seen them or any of them ; that when the deeds were executed and delivered, her husband delivered to her, what, he said, was all the notes and obligations, which he held against her son Hibbs, and what, she believed, was all of them. Nor did she know or suspect for a long time afterwards, that the notes and obligations delivered to her did not constitute all of them ; that she informed her son, that she had all his notes and obligations, but did not exhibit them to him ; that the deeds were executed on the 27th day of February, 1878 ; that her husband died on the 6th day of July, 1878 ; and that she only learned about September or October, 1878, that one Amos Jones had in his possession one of these notes amounting to $168.00, dated March 23, 1874, with interest from date. She immediately demanded it from him as her property ; but he refused to give it up and brought an action upon it against Hibbs. The bill then proceeds :

" 'Your oratrix and orator believe and charge that said note has come into the hands and possession of the said Amos Jones either through mistake, accident or fraud. They say, that said Amos Jones is a relative of said John N. Floyd, being the brother of his first wife, and that his relations with said Floyd were very intimate at and before the time of the latter's decease ; that said Jones had a great deal of familiarity with the affairs and with the valuable papers of said Floyd about the time of his death; that he procured said Floyd, a very short time before the latter's death, to place in the custody and possession of him, the said Jones, a large number of notes and obligations on different persons, without any receipt or acknowledgment from said Jones, and which said Jones retained and kept, until they were demanded and required of .him by the administrator of said Floyd ; that said Jones claimed to have bought said note of said Floyd about the 17th day of October, 1877, although complainants aver and charge, that said John N. Floyd never was known to sell a note, as they believe, but, on the contrary, frequently bought notes ; that in point of fact, at or about the very time, at which said Jones claims to have bought said note, the said John N. Floyd was collecting money to loan to said Jones, who was pressed for money ; that for some days prior to the death of said Floyd said Jones having obtained possession of the key of the chest, in which said Floyd kept his notes and sometimes money, had access to said chest and to the notes and other papers therein contained at his own pleasure and to the exclusion of all others ; that said Jones never intimated to your orator, Hibbs, that he had any note on your orator until October, 1878, although said note was due on the 15th day of September, 1877, and said Jones was known to be in want of money, and in fact trying to borrow during the period from September 15th, 1877, to October, 1878.

" 'Complainants submit, that said note or obligation belongs to your oratrix, Lucinda Floyd, and that the said Amos Jones has no title thereto, and that they are entitled in equity to ask, that he be restrained from further prosecuting said action of debt against your orator, Hibbs; and that your oratrix, Lucinda, is entitled to have said note delivered to her as her own property.

"'Your orators pray, that the record of the proceedings made and had upon said note in said action of debt and the said note and all the papers filed in said action be read with this bill as parts thereof.

"'Your orators charge, that the endorsement on said note, purporting to be dated October 20, 1877, is a falsification; that it is not the original endorsement there made; that the original endorsement has been partially erased and obliterated; that in fact spoliation has been committed, as your orators believe and charge, for a fraudulent purpose, to assist the said Jones in his fraudulent purpose of appropriating said note and its proceeds to himself, for your orators in fact charge, that they are able to prove, that said Jones himself has since the death of said John N. Floyd declared, that said Floyd had delivered all the notes of Alpheus T. Hibbs to your oratrix, Lucinda.''

"The prayer of the bill is, that Amos Jones be made a party defendant; that the note be delivered up to her; and that in the meantime Jones be enjoined from prosecuting the said action of debt.

"Jones answered the bill, alleging, that on October 20, 1877, John N. Floyd for a valuable consideration assigned the note to him, which assignment is on the back of the note signed with his proper hand, and delivered the note to him. He denies, that the note came into his hands either through mistake, accident or fraud, but admits, that he was the brother of Floyd's first wife, and that he was intimate with him and familiar with his papers at the time of his death; and that he placed in his hands a good many bonds and notes to collect and pay over to his children, which he subsequently turned over to Floyd's administrator. He denies, that he was pressed for money at the time he bought the note, or that he was trying to borrow money about that time. He admits, that it is true, that prior to the death of said Floyd he had access to his chest, in which he kept his notes, and that he had access to his notes and papers therein contained at his own pleasure and to the exclusion of all others. The answer then proceeds:

"'The defendant further says that it is not true, as charged in said bill, 'that the endorsement on said note, purporting to

be dated October 20, 1877, is a falsification ; that it is not the original endorsement then made; that the original endorsement had been partially erased and obliterated; that, in fact, spoliation has been committed for a fraudulent purpose to assist the said Jones (this defendant) in his fraudulent purpose of appropriating said note and its proceeds to himself ; but this defendant avers the truth to be, that the said endorsement bears the true date of its making, is the original one then made, and that no spoliation has been committed for a fraudulent purpose to assist this defendant in a fraudulent purpose of appropriating said note and its proceeds to himself."

"A good deal of testimony was taken in the case ; but it.is not necessary to allude to it further than is done in the opinion of the court. Upon the hearing the court dissolved the injunction previously granted and dismissed the bill. From this decree the complainants obtained an appeal and *supersedeas* to this court."

*James Morrow, Jr.*, for appellants cited the following authorities: 3 Co. 79; 1 Bland Chy. 370 ; 5 Call 236; 16 Serg. & R. 198; 5 Call 463; Code, ch. 130, § 23.

*W. W. Arnett*, for appellee.

PATTON, JUDGE :

"The bill charges, that the note in controversy was obtained by the appellee either by fraud, accident or mistake, and that the endorsement on said note purporting to be dated October 20, 1877, is a falsification, and that it is not the original endorsement then made. Both of these charges are denied in the answer ; and no proof whatever is offered tending to show, that either is true. The evidence in the case does show, that at the time the deeds were executed, appellee was present, and that the distinct agreement was, that all the notes held by John N. Floyd on one of the appellants, Hibbs, were to be delivered to the appellee, Floyd, in consideration of her joining in said deeds, and that he knowing, that that was the contract, fraudulently concealed from her the fact, that he was the assignee of one of them, giving as a reason subsequently, that he concealed the fact for fear, that if it was known, she

would treat her husband badly. Doubtless had the allegations of the bill warranted such a decree upon the facts, Jones would have been compelled to surrender this note, upon the principle that where a man, who has a title and knows it, stands by and either encourages or does not forbid the purchase by an innocent person, he and all claiming under him shall be bound by it. This seems to be a just punishment for his concealing his right, by which an innocent person is drawn in to lay out his money, or as in this case to convey away valuble property. *Engle* v. *Burns*, 5 Call 463.

"But in this case there is no allegation in the bill, upon which such evidence could be heard. The allegation is, that he obtained the note by fraud, accident or mistake. The proof shows, that he obtained it lawfully by regular assignment long anterior to the time of executing the deeds, nor is the charge of spoliation sustained by any testimony. It is a case then, in which the allegations of the bill are not supported by any proof, and in which the proof would justify relief, were there any allegations, upon which that proof could be heard. A party will not be allowed to recover upon a case proved essentially differing from that alleged in the bill. *Antony* v. *Leftwich*, 3 Rand. 238. Although the complainant makes out in evidence a good case, which under other circumstances would secure the interposition of a court of eqnity, yet if it be not the case made by the bill, it will not support the bill. *Jackson's assignees* v. *Outright*, 5 Munf. 308; 2 Rob. (old) Pr. 287, 288; Rorer on Jud. Sales 374. *Baugher* v. *Eichelberger*, 11 W. Va. 217.

"I am of opinion to affirm the decree of the court below with costs to the appellee." The decree of the circuit court of the county of Marion rendered in this cause on the 11th day of November, 1879, it seems to us for the foregoing reasons is not erroneous and must therefor be affirmed; and the appellee must recover against the appellants $30,00 damages and his costs about his defence of this cause in this court expended.

Judges Green and Johnson Concurred.

Decree Affirmed.